| | | |
|---|---|---|
| PEARL HENYARD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 10835 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MV TRANSPORTATION and | ) | |
| PACE SUBURBAN BUS SERVICE, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Pearl Henyard brings this Title VII suit against her former employers, MV Transportation and Pace Suburban Bus Service (collectively "Defendants"). R. 80, Am. Compl. ¶¶3-4.[1] In her amended complaint, Henyard alleges that she experienced discrimination and harassment based on her sex. *Id.* ¶¶10, 22. After making a complaint to her employers about the discrimination and harassment, Henyard alleges she was later retaliated against. *Id.* ¶ 23. In addition to her Title VII claims, Henyard also brings several other federal claims under the Fourteenth Amendment's Equal Protection Clause, 18 U.S.C. § 113, and 45 C.F.R. § 46; and one state law claim under the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq. Id.* ¶10. The Defendants move to dismiss all claims. R. 83, Defs.' Mot. Dismiss. For the reasons

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

set forth below, the Defendants' motion to dismiss is granted in part and denied in part.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Henyard was employed as a bus driver by MV Transportation and Pace Suburban Bus Service. Am. Compl. ¶¶ 3-4. During her employment, Henyard worked holidays in November 2014, December 2014, and January 2015. *Id*. ¶ 11; R. 86, Pl.'s Resp. at 2.[2] But the Defendants did not timely pay Henyard for her work on those days. Am. Compl. ¶ 11. Instead, the Defendants had Henyard go through somewhat of a wild-goose chase to obtain her pay. Pl.'s Resp. at 2. Henyard constantly asked the operation manager, Jaricho Worthy, about her delayed pay. *Id*. Whenever she asked him, however, Worthy directed Henyard to a woman by the name of Nicole in the payroll department, who then directed Henyard back to Worthy. *Id*. It was not until four or five months later that the Defendants finally paid Henyard for her holiday hours. Am. Compl. ¶ 11; Pl.'s Resp. at 2.

Henyard experienced similar delays when requesting medical leave. Am. Compl. ¶ 12; Pl.'s Resp. at 2-3. To obtain time off, an employee working for the

---

[2]Despite having already allowed Henyard to amend her complaint, in an effort to liberally construe Henyard's *pro se* complaint, the Court supplements the complaint with the additional facts Henyard alleges in her response to the extent they do *not* raise new claims and are consistent with the allegations in the complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citing *Am. Inter–Fid. Exch. v. Am. Re–Ins. Co.*, 17 F.3d 1018, 1021–22 (7th Cir.1994)) ("[A] plaintiff may assert additional facts in a motion to defeat dismissal so long as she does not make new claims in such a motion.").

Defendants must submit a written request form no less than one week before and no more than four weeks before the day requested. Pl. Resp. at 2. Whenever Henyard put in her written requests, she had to repeatedly ask Worthy to sign them. *Id.* at 2-3. Worthy would not approve Henyard's requests until the day right before the requested day off. *Id.*

According to Henyard, the Defendants also denied her work assignments and changed her bus route which consequently "changed the quality of the job." Am. Compl. ¶ 13. Specifically, the Defendants removed, cancelled, and moved certain trips from Henyard's scheduled routes from April to July 2014. Pl. Resp. at 4. After July, the Defendants re-added one or two trips from Henyard's original bus route, but Henyard "would have preferred to have had a regular schedule" like other employees. *Id.*

Additionally, while working for the Defendants, Henyard's coworker repeatedly said "verbal things to try to entice her," and her supervisor constantly harmed and insulted her. Am. Compl. ¶ 14. In January 2015, one of Henyard's coworkers touched or slapped her rear. Pl. Resp. at 5. After this incident, every time Henyard would see this coworker at work, she would say things like "you are a cute chocolate girl," "you like me," and "you missed me," followed by what Henyard describes as "an obnoxious noise as through she [was] laughing." *Id.* Henyard's supervisor also constantly harmed and insulted Henyard. Am. Compl. ¶ 14; Pl.'s Resp. at 3. One such example of this, is when her supervisor, Worthy, "pulled [her] scarf" and "choked" her. Pl.'s Resp. at 3.

Eventually, in July 2015, Henyard complained about these experiences. Pl.'s Resp. at 7; Am. Compl. ¶ 15. Three days later, when Henyard returned to work, "30 to 40 pieces of substance flew out of the vehicle's vent." *Id*. As a result, Henyard sustained numerous injuries. *Id*. On a different occasion, but also after she had made her complaint, Henyard noticed a black greasy substance as well as a white powdery substance on her finger that caused it to go numb. Pl.'s Resp. at 7. Finally, in September 2015, Henyard filed an EEOC complaint based on these allegations. *Id*.; R. 1, Compl.

Throughout her employment, the Defendants also recorded Henyard without her consent. Am. Compl. ¶ 16. The buses contained a dash cam that can record what is happening inside it. *Id*. The Defendants' policy requires employees to consent to being recorded when there is a sudden "jerk, bump, [or] shift," of the bus or when the driver turns on the camera for purposes of recording incidents related to the bus or passengers. *Id*. Whenever either of these occur, the dash cam records for only ten to fifteen seconds. *Id*. As an employee, Henyard consented to being recorded under those circumstances. *Id*. But the Defendants recorded Henyard "throughout [the] duration of [the] job," to which Henyard did not consent. *Id*. While driving the Defendants' buses, Henyard took private phone calls on speaker phone, and had private conversations with passengers. Pl.'s Resp. at 7.

Eventually, Henyard filed this employment-discrimination suit against the Defendants and several others. Am. Compl. Henyard later filed two amended complaints without leave to do so. *See* R. 64, R. 76. The Court allowed the most recent

version to be filed but only as to the currently named Defendants. R. 79, 2/27/18 Minute Entry. In addition to her Title VII claims, Henyard also brings several other federal claims under the Fourteenth Amendment's Equal Protection Clause, 18 U.S.C. § 113, as well as 45 C.F.R. § 46, and one state law claim under the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq*. Am. Compl. The Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

"[W]hen evaluating the sufficiency of a complaint," the Court may also consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss ... so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (cleaned up); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" and "may find it prudent to do so"). Moreover, in evaluating a *pro se* complaint, the Court applies a less stringent standard than formal pleadings drafted by lawyers. *Smith*, 803 F.3d at 309.

### III. Analysis

### A. Title VII

Henyard brings several Title VII claims. She alleges that she was discriminated against on the basis of her sex, and also that she was subjected to harassment by her coworker and her supervisor. Am. Compl. ¶ 22. Henyard also alleges that she was retaliated against after she filed an EEOC complaint. *Id*. ¶ 23.

The Defendants move to dismiss all three claims. The Court addresses each of the Defendants arguments in turn.

## 1. Timeliness

As a preliminary matter, the Defendants argue that Henyard's Title VII claims were not filed on time. Defs.' Mot. Dismiss at 5. Specifically, they argue that Henyard did not file an EEOC charge within 300 days after the alleged unlawful employment practice occurred as required by law. *Id*. But "dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). This unusual step is appropriate "only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. *Id*.

Here, the Defendants contend that Henyard failed to "suppl[y] a single date or time frame during which the alleged harassment and discrimination occurred." Defs.' Mot. Dismiss at 5. Without those specifics, however, it is not possible to decide the statute of limitations issue on the pleadings. *See Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 928. Although discovery might very well uncover that Henyard's Title VII claims are indeed untimely, the Court cannot decide this issue now. *Id*. ("questions of timeliness are left for summary judgment or ultimately trial, at which point the district court may determine compliance with the statute of limitations based on a more complete factual record") (cleaned up). The Court next

turns to whether Henyard alleged a plausible set of facts to succeed on her sex discrimination and harassment claims.

## 2. Sex Discrimination

On the merits, the Defendants first argue that Henyard's sex discrimination claim should be dismissed because she has not alleged facts demonstrating that she suffered any adverse employment actions. Defs.' Mot. Dismiss at 2-3. The Court agrees—the incidents Henyard alleged in support of this claim do not rise to the level of adverse employment actions.

To survive a motion to dismiss a sex discrimination claim, a plaintiff need only allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014); *see also EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007) (stressing the simplicity of pleading a Title VII discrimination claim). An adverse employment action is at a minimum "a quantitative or qualitative change in the terms or conditions of employment." *de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 685-86 (7th Cir. 2008). In other words, an adverse employment action is "more than a mere inconvenience of an alteration of job responsibilities." *Id*. Examples of materially adverse employment actions include: "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*.

Henyard proposes three adverse employment actions in support of her sex discrimination claim. First, she alleges that she received holiday pay four to five months late. Am. Compl. ¶ 11. As the Defendants point out, sometimes a delay in pay is not considered an adverse employment action. *See Matthews v. Donahoe*, 493 F. App'x 796, 800 (7th Cir. 2012) (non-precedential disposition); *Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004). But there is no hard and fast rule that says that a delay in pay can *never* be considered an adverse employment action. At a certain point, a delay in pay—depending on how much is withheld and for how long—could plausibly rise to the level of being "adverse."

But the circumstances here are just not so. Considering the federal holidays in the months that Henyard alleges she worked (namely, November, December, and January), Henyard worked at least five holidays that went unpaid. Pl.'s Resp. at 2. Although certainly frustrating and inconvenient, waiting four to five months for five days' pay—spread out over three months—does not rise to the level of an adverse employment action. In *Matthews v. Donahoe*, for example, the Seventh Circuit did not consider even a four-month delay of four *months*' worth of pay to be an adverse employment action. 493 F. App'x at 800; *see also Herron*, 388 F.3d at 301 (holding that a two-month delay in overtime payment was not an adverse employment action). Henyard would have a much better argument if, say, the five days were consecutive, thus cutting a bi-weekly paycheck in half. But that did not happen here. To be sure, accepting the allegations as true, Henyard endured frustration in having to repeatedly ask for her pay. But inconvenience alone is insufficient to rise to the level

of an "adverse" action for purposes of Title VII. *See de la Rama*, 541 F.3d at 686 ("[I]n order to be actionable, adverse actions must be materially adverse meaning more than a mere inconvenience or an alteration of job responsibilities.") (cleaned up).

Second, Henyard alleges that there were delays in the approval of her medical leave. Am. Compl. ¶ 12. Specifically, she alleges that she had to repeatedly ask Worthy to sign off on her requests for sick days, and that Worthy would not sign her requests until the day before her requested sick day. Pl.'s Resp. at 2-3. But this too does not rise to the level of an adverse employment action. Nothing about the circumstances here suggest a "change to the terms or conditions of [Henyard's] employment." *Palermo v. Clinton*, 437 F. App'x 508, 510 (7th Cir. 2011) (non-precedential disposition) (citing *de la Rama*, 541 F.3d at 686). And Henyard acknowledges that she was allowed the medical leave within the time that she needed it. Even if the Defendants did not strictly follow their own internal policy on the approvals, that alone does not qualify as an adverse employment action under Title VII.

Third, Henyard alleges that she was "[d]enied assignments which resulted in changes of route" that ultimately "changed [the] quality of the job." Am. Compl. ¶ 13. But a denial of an assignment without more also does not rise to the level of an adverse action. *See Traylor v. Brown*, 295 F.3d 783, 789 (7th Cir. 2002). In *Traylor v. Brown*, for example, an employee contended that her employer refused to allow her to perform the duties she requested. *Id.* at 786. The Seventh Circuit held that this refusal was not an adverse employment action because the employee was not fired,

demoted, or disciplined. *Id.* at 789. Neither was her pay affected, nor did her job responsibilities materially diminish. *Id.* Furthermore, the other employees who performed the duties that the employee requested received no promotions, higher pay, or prestigious titles for doing so. *Id.*

Similarly, here, Henyard has not alleged any kind of material harm from the denial of the desired assignments. Essentially, all that Henyard alleges resulted from the denial of assignments that she requested was changes to her bus route. *See* Pl.'s Resp. at 3-4. But she does not allege that these changes affected her pay, duties, or job title in any way. Henyard also does not allege that the employees who had "regular schedule[s]" received higher compensation, promotions, changes in titles, or any other material changes to their job responsibilities. *Id.* at 4. And although Henyard may have "preferred to have had a regular schedule," *id.*, "not everything that makes an employee unhappy will suffice to meet the adverse action requirement." *Traylor*, 295 F. 3d at 788.

Because Henyard has not alleged facts sufficient to claim an adverse employment action, the Court dismisses the sex discrimination claim.

### 3. Harassment

The Defendants also move to dismiss Henyard's harassment claims. Defs.' Mot. Dismiss at 3-4. To state a Title VII hostile work environment claim, a plaintiff must allege that (1) she was subject to unwelcome harassment; (2) the harassment was based on membership in a protected class; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive

11

working environment; and (4) there is a basis for employer liability. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-834 (7th Cir. 2015). The Defendants take issue with the second and third elements. On the second element, the Defendants argue that Henyard "has failed to plead any facts that connect the alleged conduct to her sex." Defs.' Mot. Dismiss at 4. On the third element, they argue that Henyard failed to "demonstrate that her working conditions were *hellish*." Defs.' Mot. Dismiss at 3 (emphasis added). These arguments are rejected.

As an initial matter, even without the additional allegations in her response, Henyard's complaint gave the Defendants enough notice of the alleged harassment. First, Henyard is a *pro se* plaintiff and "the pleading standards for *pro se* plaintiffs are considerably relaxed." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (citing *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam)); *see also Arnett v. Webster*, 658 F.3d at 751 (7th Cir. 2011) (reminding courts to "construe *pro se* complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers")). And second, the pleading standards for Title VII claims are likewise "undemanding." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also Huri*, 804 F.3d at 834 ("The pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet."). "In Title VII cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028; *Tate*, 809 F.3d at 346; *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Employers are familiar with discrimination

claims and know how to investigate them, so little information is required to put the employer on notice of these claims."). In *Tate*, for example, the *pro se* plaintiff alleged as follows: "[d]uring my employment, I was subjected to sexual harassment ... I believe I was discriminated against because of ... my sex" in support of his Title VII harassment claim. 809 F.3d at 345. The district court dismissed Tate's complaint for failure to state a claim. *Id*. But the Seventh Circuit reversed and held that Tate's complaint survived dismissal because a plaintiff alleging a Title VII claim need not plead facts to establish a prima facie case and only has to put the defense on notice of the claim. *See id*. Henyard has sufficiently done that here: she alleged that she was harassed by her coworker and her supervisor based on her sex, Am. Compl. ¶¶ 2, 22, and she provided additional facts in the response, Pl.'s Resp. at 5. She did not have to plead any more.

Nevertheless, the Defendants argue that Henyard has not sufficiently pled the third element of the hostile work environment claim because she failed to "demonstrate that her working conditions were *hellish*." Defs.' Mot. Dismiss at 3 (emphasis added). Despite cases applying that standard in the distant past, a Title VII plaintiff need *not* meet such a high standard. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018) ("[T]he environment need not reach the point of 'hellishness' as some cases once argued."); *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) ("[A] workplace need not be 'hellish' to constitute a hostile work environment.); *Jackson v. Cty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) ("We trust that in the future counsel will avoid the use of a single, overwrought word like 'hellish'

to describe the workplace."). Instead, "[t]o rise to the label of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Huri*, 804 F.3d at 833-834 (emphasis in original).

"[I]t is premature at the pleading stage to conclude just how abusive [Henyard's] work environment was." *Huri*, 804 F. 3d at 834. Based on the allegations in Henyard's complaint and her *pro se* response, it is enough to say that it is plausible that getting slapped on her behind by a coworker, who then repeatedly made statements like "you are a cute chocolate girl," you like me," and "you missed me" created a hostile work environment. The same can be said about Worthy's alleged conduct, namely that he choked Henyard with her own scarf. The pleading standard is of course different from the evidentiary burden that Henyard must eventually satisfy at the summary judgment stage or at trial. *See Huri*, 804 F.3d at 834 (citing *Swierkiewicz,* 534 U.S. at 511). It may be that once discovery has run its course, Henyard cannot produce evidence to survive summary judgment. But the Court need not dive into that today. Based on Henyard's allegations, the Defendants have "sufficient notice" of her claims. The Court therefore denies the Defendants' motion to dismiss Henyard's harassment claims.

### 4. Retaliation Claim

The Defendants also move to dismiss Henyard's retaliation claim, arguing that she has not alleged sufficient facts to draw a connection between the alleged retaliation and the Defendants' actions. Defs.' Mot. Dismiss. at 7-8. The Court agrees.

To plead a Title VII retaliation claim, a plaintiff must allege two things: (1) she engaged in statutorily protected activity and (2) was subjected to an adverse employment action *as a result* of engaging in that activity. *See Huri*, 804 F.3d at 833 (emphasis added). But the allegations in Henyard's complaint do not so much as even suggest that her injuries were *a result* of her complaints. And neither do the additional allegations in her response. All that she alleges is that she complained, and then was later injured—but none of the facts suggest that the Defendants took any part in causing the injury. The Court dismisses the retaliation claim.

## B. Illinois Eavesdropping Act Claim

The Defendants make two arguments for dismissing Henyard's Illinois Eavesdropping Act claim. Defs.' Mot. Dismiss at 6. First, they argue that Henyard has failed to establish that the Defendants "secretly" recorded her voice without her consent. *Id*. And second, they argue that even if she was secretly recorded, Henyard failed to establish that she had a reasonable expectation of privacy while driving the Defendants' vehicles. *Id*. Neither argument is fatal to this claim.

The Illinois Eavesdropping Act prohibits a person from knowingly and intentionally using "an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation" 720 ILCS 5/14-2(a)(1). The Act defines surreptitious as "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 ILCS 5/14-1(g).

First, the Defendants argue that Henyard made no allegation that the recordings were done in "secrecy." Defs.' Mot. Dismiss at 6. To support their secrecy argument, the Defendants point to the fact that Henyard knew she was being recorded and consented to being recorded "under certain circumstances." *Id*. But just because Henyard may have known or consented to being recorded "under *certain* circumstances" does not mean that she knew or consented to being recorded under *any and all* circumstances. In fact, Henyard alleges that she only consented to being recorded for ten to fifteen minutes under two circumstances: (1) whenever there is a "hard jerk, bump, [or] shift," which sets the camera off to record; or (2) "when the camera button is pressed" by Henyard herself. Am. Compl. ¶16. It is plausible, then, that recordings that occurred under circumstances outside of those two were "executed through secrecy or concealment." 720 ILCS 5/14-1(g).

Next, the Defendants rely on the Seventh Circuit's opinion in *Thomas v. Pearl* to support their argument, but that case is unpersuasive. 998 F.2d 447, 453 (7th Cir. 1993). There, the Seventh Circuit affirmed the dismissal of an Illinois Eavesdropping Act claim because the plaintiff was speaking freely to the alleged eavesdropper and therefore could not have intended to keep his statements private *vis-a-vis* that individual. *Id*.[4] But that is not the case here—the Defendants were not a party to the alleged private conversations. Pl.'s Resp. at 6.

---

[4]The Court further notes that the Seventh Circuit interpreted the Illinois Eavesdropping Act in *Thomas v. Pearl* before the statue's 1994 amendment. Before that amendment, the Illinois Supreme Court held, in *People v. Beardsley* (a case on which the Seventh Circuit relied), that eavesdropping does not occur where an individual is a party to the conversation, because under that circumstance, the conversation cannot be intended to be private or secret. 115 Ill.2d 47, 53 (1986). But the year after *Thomas v. Pearl* was decided,

Second, the Defendants argue that even if the recordings were done in secrecy, Henyard failed to establish that she had a reasonable expectation of privacy in the Defendants' vehicles. Defs.' Mot. Dismiss at 6. The Illinois Eavesdropping Act only applies to "oral communication between 2 or more persons … when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d). Under the act, "[a] reasonable expectation shall include any expectation recognized by law." *Id*.

The law recognizes that it is reasonable for an employee to "conduct confidential business at work, and have an expectation of privacy while doing so." *Narducci v. Moore*, 572 F.3d 313, 320 (7th Cir. 2009) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987)). In certain circumstances, an employee can retain this expectation of privacy, even when she uses employer-owned equipment to conduct her confidential business. *See id.* (recognizing that an employee may have a reasonable expectation of privacy when using an employee owned phone line); *see also Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (recognizing that there can "be a right of privacy … in employer-owned equipment furnished to an employee for use in his place of employment"). For example, "if the employer equips the employee's office with a safe or file cabinet or other receptacle in which to keep his

the Illinois State legislature amended the eavesdropping statute. Pub. Act 88–677, § 20 (eff. Dec. 15, 1994). The amendment served to supersede the holding in *Beardsley*: "The purpose of the 1994 amendments was to make clear, in contrast to *Beardsley*'s interpretation, that the consent of all parties to recording a conversation is required, regardless of whether the parties intended their conversation to be private." *See People v. Clark*, 2014 IL 115776, ¶ 16 (citing 88th Ill. Gen. Assem., Senate Proceedings, Apr. 21, 1994, at 139 (statements of Senator Dillard)).

private papers, he can assume that the contents of the same are private." *Muick*, 280 F. 3d at 743. (citing *O'Connor*, 480 U.S. at 718-19).

The "operational realities of the workplace," however, "may make *some* employees' expectations of privacy unreasonable." *Narducci*, 572 F.3d at 320 (emphasis in original). Where an employee is aware of the existence of a workplace policy reserving an employer's right to inspect the employee's equipment or work area, for example, the employee may have a reduced expectation of privacy. *See Muick*, 280 F.3d at 743; *Hurst v. Bd. of Fire & Police Comm'n*, 952 N.E.2d 1246, 1251 (Ill. App. Ct. 2011). In *Muick v. Glernayre*, for example, the Seventh Circuit held that the employee did not have a reasonable expectation of privacy in an employer-owned computer because the employer implemented a policy indicating he could inspect the laptops. 280 F.3d at 743.

But the employer in *Muick* had expansive inspection power—the policy did not limit the employer's ability to inspect employee laptops to only certain circumstances. Here, however, Henyard alleges that the Defendants could only record, or at least Henyard only consented to being recorded, when the camera was set off by a sudden movement of the bus, or when she turned the camera button on herself. Am. Compl. ¶16. Whenever either of these situations occurred, Henyard's expectation of privacy was certainly diminished. But under the facts Henyard alleges, it is plausible that outside of these two specific circumstances, there were certain situations in which Henyard could have maintained a reasonable expectation of privacy. If Henyard's alleged private conversations occurred, for example, when there was no one else in

the Defendants' vehicle, and the camera was not set off by either of the two circumstances described, then Henyard could have had a reasonable expectation of privacy. At least at the pleading stage, Henyard has sufficiently alleged the elements necessary to state a claim under the Illinois Eavesdropping Act. The Court denies the Defendants' motion to dismiss this claim.

## C. Remaining Claims

The Defendants seek to dismiss the remainder of Henyard's claims. The Defendants argue that Henyard's Fourteenth Amendment Equal Protection claim fails because the Defendants are not state actors. Defs.' Mot. Dismiss. at 7. To bring a claim under the Equal Protection Clause, the plaintiff must present evidence of "state action," rather than purely private action. *See Gilmore v. City of Montgomery*, 417 U.S. 556, 565 (1974); *Sherman v. Cmty. Consol. Sch. Dist.* 21, 8 F.3d 1160, 1167-69 (7th Cir. 1993). State action is action that may be "fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). In certain situations, however, the conduct of private actors can constitute state action. *See Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n., et al.*, 531 U.S. 288, 295 (2001). A non-governmental defendant acts under color of state law only where there is "such a close nexus between the State and the challenged action that seemingly private behavior maybe fairly treated as that of the State itself." *Id.* (quoting *Jackson*, 419 U.S. at 351) (cleaned up). But Henyard does not attempt to argue that a close connection between the Defendants' action and the State exists,

nor does she present factual allegations to support that sort of connection. The claim is therefore dismissed.

The Defendants also argue that Henyard does not have a private right of action to assert a criminal claim for overseas torture pursuant to 18 U.S.C. Chapter 113 C. Defs.' Mot. Dismiss. at 7. The Court agrees. *See* 18 U.S.C. § 2340B ("Nothing in this chapter [shall] be construed as creating any substantive or procedural right enforceable by law ... in any civil proceeding."); *see also Karim-Panahi v. 4000 Massachusetts Apartments*, 302 F. Supp. 3d 330, 338 (D.D.C. 2018), *aff'd*, No. 18-7054, 2018 WL 6167393 (D.C. Cir. Nov. 1, 2018).

Lastly, the Defendants seek to dismiss both of Henyard's claims brought under 45 C.F.R. § 46, a federal policy regarding human subjects that applies to federal agencies and offices. This set of regulations does not create a cause of action for a private party against private actors or a state organization. Instead, they apply solely to "research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency." 45 C.F.R. § 46.101.

## IV. Conclusion

For the reasons discussed above, the Court grants the Defendants' motion to dismiss in part and denies in part. The hostile work environment claim survives, as does claim under the Illinois Eavesdropping Act. All other claims are dismissed with prejudice. At the next status hearing, the Court will set an answer deadline and the

discovery schedule. Both sides must appear at the status hearing so that the Court can discuss case management.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2019